```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
                             )
          v.                 )   Criminal No. 11-22J
                             )
BONNIE L. CHAPMAN            )
```

**MEMORANDUM IN AID OF SENTENCING**

AND NOW comes the defendant, Bonnie L. Chapman, by her attorney, Christopher B. Brown of the Federal Public Defender's Office, and respectfully submits this Memorandum in Aid of Sentencing in support of a sentence of probation, no fine, no restitution, and a $100 special assessment.

**I.   INTRODUCTION:**

Bonnie Chapman is a 63 year old woman who lives alone in a one bedroom house in Hanoverton, Ohio - a rural area 30 miles from the West Virginia border.  She is in extremely poor physical health - she suffers from congestive heart failure, spinal stenosis, degenerative disc disease, diabetes, sarcoidosis, and sleep apnea.  She is also morbidly obese, in need of a hip replacement, and uses either, crutches, a walker, or a wheelchair for mobility. At all times she is short-of-breath and is in constant pain. Additionally, she is in poor mental health as a long term sufferer from depression and anxiety.

Prior to the instant offense, Ms. Chapman smoked marijuana on and off for nearly forty years - she did so to self-medicate. It is no coincidence that in the instant offense, George Lowmaster recruited Ms. Chapman, his former lover, to receive packages for him on the promise he would pay her in marijuana. Lowmaster had packages shipped to her home as well as others' and instructed her to deliver the packages to him, unopened. In exchange for this she was paid in marijuana, which she did not sell, but rather smoked herself. She did this on approximately ten occasions from 2009 through 2011.

*        *        *

Ms. Chapman has pled guilty for her role in this conspiracy to distribute marijuana and is scheduled for sentencing on December 9, 2013.

The United States Probation Office has calculated Ms. Chapman's advisory Guidelines range to be 60-63 months. In her Position with Respect to Sentencing Factors, Ms. Chapman has disagreed and submitted that the range is 37-46 months. Whichever range this Court determines it to be, a sentence of probation is warranted in this case. For the reasons set forth below (and reasons that will be presented at sentencing), there are numerous grounds for a downward

departure and variance that justify such a sentence.

In support, Mr. Chapman provides the following:

**II.   SENTENCING CONSIDERATIONS:**

At sentencing, post-Booker, district courts are required to follow a three-step sentencing process.[1]  See United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006) (internal quotation marks, citations, and alterations omitted).

**STEP 1:   Calculate the Guidelines range.**

As set forth in the Position with Respect to Sentencing Factors, Ms. Chapman objects to the Guidelines range set forth in the Pre-Sentence Report.  In summary, Ms. Chapman objects to the assessment of one criminal history point for a DUI conviction at PSR ¶60 because Ms. Chapman was entitled to

---

[1]   The three steps are: 1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before Booker; (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-Booker case law, which continues to have advisory force; (3) Finally, they are required to exercise their discretion by considering the relevant [18 U.S.C.] § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.  Gunter, 462 F.3d at 247.

3

counsel, did not have counsel, and there is no evidence of a valid waiver of counsel.  In light of this, the prior DUI conviction is void and cannot count for criminal history purposes.  See Alabama v. Shelton, 535 U.S. 654 (2002); Custis v. United States, 511 U.S. 485, 494 (1994); U.S.S.G. § 4A1.2 (Comment at "Background" states "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor offenses where imprisonment was not imposed").

Given the above, Ms. Chapman has 1, not 2 criminal history points and is therefore a criminal history category I, not II.  In light of this, the safety valve under U.S.S.G. § 5C1.2 applies and reduces Ms. Chapman's base offense level by 2 levels under § 2D1.1(c)(16).  Therefore her total offense level is 21, not 23, and at a category I has an advisory Guidelines range of 37-46 months imprisonment, not 60-63 months.

**STEP 2:   Rule on Departure Motions.**

Ms. Chapman moves for a downward departure based on her age and her physical condition.  United States Sentencing Guidelines section 5H1.1 states,

> Age (including youth) may be relevant in

4

> determining whether a departure is warranted, if considerations based on age, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration. Physical condition, which may be related to age, is addressed at §5H1.4 (Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction).

In combination with the above, United States Sentencing Guidelines section 5H1.4 states in part,

> Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

The Sentencing Commission remarked that age and physical impairment "<u>may</u> be relevant in determining whether a departure is warranted." <u>See</u> U.S.S.G. §§ 5H1.1 & 5H1.4 (emphasis added). In Ms. Chapman's case these factors <u>are</u> relevant and a departure <u>is</u> warranted.

First, as to physical impairment, Ms. Chapman is

5

morbidly obese, in constant pain and short of breath, and requires the use of crutches, a walker, or a wheelchair for mobility.[2] She has also been diagnosed with a host of serious medical maladies including congestive heart failure ("CHF")[3], spinal stenosis[4], degenerative disc and joint disease, type II

---

[2] A surgery to replace her hip has been rescheduled until and when she is no longer morbidly obese.

[3] CHF "is a condition in which the heart is no longer able to pump out enough oxygen-rich blood. This causes symptoms to occur throughout the body." Symptoms include but are not limited to the following: Cough, fatigue, weakness, faintness, loss of appetite, need to urinate at night, pulse that feels fast or irregular, or a sensation of feeling the heart beat (palpitations), shortness of breath when you are active or after you lie down, swollen (enlarged) liver or abdomen, swollen feet and ankles, waking up from sleep after a couple of hours due to shortness of breath, weight gain. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001211/

[4] Spinal stenosis is "narrowing of the spinal column that causes pressure on the spinal cord, or narrowing of the openings (called neural foramina) where spinal nerves leave the spinal column." Symptoms include but are not limited to the following: numbness, weakness, poor balance, inability to control bowels. http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001477/

diabetes mellitus ("DM")[5], sarcoidosis[6], and sleep apnea.  See Medical Records from Cleveland Clinic Heart and Vascular Institute, attached as Exhibit A.  As a result of all these conditions (and others), Ms. Chapman takes the following medication: spironolactone (prevents fluid retention related to CHF), metformin (oral antidiabetic drug), atorvastatin (cholesterol-lowering medication), alprazolam (anti-anxiety), omeprazole (treats acid reflux), triamcinolone acetonide (topical cream to treat skin condition), naproxen (for pain and inflammation), cyclobenzaprine (muscle relaxant), and prozac (anti-depressant).  See Exhibit A.

    Second, and in combination with her health, Ms. Chapman's age is also a critical factor in the downward

---

[5] DM "is a disease in which your blood glucose, or blood sugar, levels are too high ... With type 2 diabetes, the more common type, your body does not make or use insulin well. Without enough insulin, the glucose stays in your blood. Over time, having too much glucose in your blood can cause serious problems. It can damage your eyes, kidneys, and nerves. Diabetes can also cause heart disease, stroke and even the need to remove a limb." http://www.nlm.nih.gov/medlineplus/diabetes.html

[6] Sarcoidosis "is a disease that leads to inflammation, usually in your lungs, skin, or lymph nodes. It starts as tiny, grain-like lumps, called granulomas. Sarcoidosis can affect any organ in your body." Symptoms include but are not limited to the following: Shortness of breath, fatigue, bone and joint pain. http://www.nlm.nih.gov/medlineplus/sarcoidosis.html

7

departure analysis.  Ms. Chapman is 63 years old and as such, her age plays an obvious role in her general physical well-being.  Yet, her age also impacts other factors like her risk of recidivism - which is extremely low and should likewise be considered.  The Sentencing Commission has found that "recidivism rates decline relatively consistently as age increases" finding that defendants over the age of 50, like Ms. Chapman, "have a recidivism rate of 9.5 percent."  <u>U.S. Sentencing Comm'n, Measuring Recidivism: the Criminal History Computation of the Federal Sentencing Guidelines</u> at 12 (May 2004) (A Component of the Fifteen year Report on the U.S. Sentencing Commission's Legislative Mandate).  This study also found that "women recidivate at a lower rate than men." <u>Id.</u> at 11.

   Third, like her low risk of recidivism, another factor to consider is Ms. Chapman's vulnerability as an inmate should she be incarcerated, given her age and poor health.  The Department of Justice itself has determined that "management problems with elderly inmates are intensified in the prison setting and include: vulnerability to abuse and predation" as well as the "need for special physical accommodations in a relatively inflexible physical environment."  <u>Correctional Health Care, Addressing the Needs</u>

8

of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Dept. Of Justice National institute of Corrections, 9, 10 (2004). Ms. Chapman easily fits the D.O.J.'s definition of "elderly" as they define it to be age 50 or older. Id.

Finally, for this Court's consideration, departure motions have been granted in similar circumstances based on a combination of a defendant's age and health. See United States v. Willis, 322 F.Supp.2d 76 (D.Mass. 2004)(sentence of probation imposed in a tax evasion case for 69 year old man in poor health after downward departures based on age, physical impairment, and substantial assistance); United States v. Senesey, 1997 WL 187345 (S.D.N.Y. 1997) (sentence of probation imposed in a bribery case for 83 year old man in poor health after downward departures based on age, physical impairment, and substantial assistance).

Given the above factors - Ms. Chapman's physical impairments, her age, her immobility, her low risk of recidivism, and her vulnerability in prison - a downward departure from the advisory Guidelines range down to a sentence of probation is warranted.

9

**STEP 3:** Consideration of the § 3553(a) factors:[7]

As set forth above and in more detail below, Ms. Chapman asks this Court to consider several factors which demonstrate that a downward variance is warranted from the advisory Guidelines range which recommend incarceration down to a sentence of probation - that in this case such a sentence would be sufficient but not greater than necessary to satisfy the purpose of 18 U.S.C. § 3553(a).

**FACTOR 1, Nature and Circumstances of the Offense**

---

[7] Title 18, Section 3553(a) provides that, in addition to the applicable guideline range and Sentencing Commission policy statements, district courts are required to consider the nature and circumstances of the offense and the history and characteristics of the defendant, the kinds of sentences available, the sentence recommended by the sentencing guidelines, any pertinent policy statements, the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to victims of the offense. 18 U.S.C. § 3553(a)(1), (3), (4), (5), (6), and (7).

In addition, under 18 U.S.C. § 3553(a)(2) district courts must impose a sentence "sufficient, but not greater than necessary" to comply with the need for the sentence:
    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B)  to afford adequate deterrence to criminal conduct;
    (C)  to protect the public from further crimes of the defendant; and
    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

**and the History and Characteristic of the Defendant:**

The first part of § 3553(a)(1) is to consider "the nature and circumstances of the offense." In the instant matter Ms. Chapman was recruited by her former (and much younger) lover, George Lowmaster, to receive packages of marijuana intended for him and his large drug distribution network. PSR ¶36. He instructed her, as he did others, to contact him when she received a package in the mail intended for him. PSR ¶36. She was then instructed to drive it over to the residence of co-defendant Jorge Harkleroad where Lowmaster would meet her to retrieve the unopened package. PSR ¶36. When she did this, Lowmaster paid her not in money, but rather in marijuana, which she took for her own personal use. PSR ¶36. Ms. Chapman, a near four decade smoker of marijuana with a wide-range of physical and mental health problems, did this for Lowmaster approximately 10 times over a two year period. PSR ¶36.

Ms. Chapman respectfully requests this Court to consider the "nature and circumstances of the offense" when determining if a downward variance is appropriate. Specifically, to consider her role, her long history of marijuana use and the fact that she was paid in marijuana,

her total lack of profit, and the fact that her conduct did not involve violence, threats of violence, nor the possession of weapons.  For those reasons a sentence of incarceration is not warranted, and a downward variance should be granted.

The second part of the first § 3553(a) factor is to consider "the history and characteristics of the defendant.[8]

Bonnie Chapman is 63 years old and has lived the vast majority of her life in rural Ohio.

She was raised by her biological parents only to be abandoned by her mother at 14 years old.  Thereafter, she was raised by a temperamental and physically abusive father.  The mental strain from these circumstances proved too much and she attempted suicide at 14 years old.

She later married on two occasions, both to abusive men. The first was physically abusive, the second emotionally (including threatening to kill her at gun point on several occasions).  During her second marriage, Ms. Chapman became so depressed that she experienced an extreme weight gain - standing 5 feet 4 inches tall, she weighed over 400 pounds. It was then that she attempted suicide for the second time

---

[8] Information contained in the "history and characteristics" section is gleaned from the PSR, client interviews, and from the character letters attached as Exhibit B.

12

and was hospitalized for a mental breakdown.

Following her second divorce in 1984, she never remarried and has no children.

Given her tumultuous upbringing and marriages, it cannot be a coincidence that Ms. Chapman is a long-term sufferer from anxiety and depression. In addition to medication, to relieve some of her symptoms associated with these mental health disorders, Ms. Chapman smoked marijuana for nearly forty years (her use ceased in 2011).

As set forth in detail above, Ms. Chapman also has a variety of debilitating physical ailments. They primarily began a few years after her final divorce, when she was 42 and developed sarcoidosis and congestive heart failure. It was then that she began collecting Social Security Disability. Prior to that time, she worked steadily for several decades as either a waitress, a bar maid, or as a cook. Yet, since her health declined, she has survived off of a meager $698 a month in disability benefits and $104 a month in food stamps.

Following her disability Ms. Chapman was, however, able to secure her college degree from Kent State University. Despite that personal success, her health has been in steady decline ever since.

13

Most of Ms. Chapman's family has passed away, save for one sibling. She lives a fairly isolated life, alone with her dogs, in her modest one-bedroom home which is located in rural Ohio near the West Virginia border. Of the few people that remain close with Ms. Chapman, one thinks of her to be a surrogate mother, and asks this Court to consider the impact she has had on her life. See Exhibit B.

Given the above, and in combination wit the arguments made for a downward departure at Step 2, and downward variance is warranted in this case based on Ms. Chapman's history and characteristics.

### **FACTORS 2-7:**

With regard to Factors 2-7, Ms. Chapman advances no additional arguments to those that have already been presented.

### III. **CONCLUSION:**

WHEREFORE, for the all the reasons mentioned above, Bonnie Chapman respectfully requests this Court grant a downward departure and/or a downward variance and impose a sentence of probation, no fine, and a $100 special assessment.

Respectfully submitted,

**s/ Christopher B. Brown**
Christopher B. Brown, Esquire
Attorney I.D. No. 85117